IKE LILLEY v. THE STATE.

No. 8727.    Delivered May 6, 1925.

Rehearing denied June 3, 1925.

1.—Murder—Bills of Exception—Time to Prepare—No Injury Shown.

Where complaint is made by counsel that the court refused to allow him sufficient time to prepare a bill of exception, he must make some showing of injury, in order to have the matter reviewed on appeal.

2.—Same—Bills of Exception—Practice.

Where a bill of exceptions complains of the admission of statements of appellant, on the ground that same were made while under arrest, such bill must be substantiated by proof that the accused was in fact under arrest, or nothing is presented by such bill for review by this court.

3.—Same—Charge of Court—Exceptions to—Time Allowed.

Where appellant complains that he was only allowed one hour and five minutes in which to prepare his written exceptions to the court's charge, and nothing appears in said charge that exceptions could properly have been presented to, excepting those covered by appellant's exceptions, which were taken, no error is presented. Unless appellant's bill points out some fault in the charge to which an exception could have been taken, if more time had been given, we would not be inclined to hold that a longer time was necessary than was given.

4.—Same—Charge of the Court—On Manslaughter—Properly Refused.

A charge on manslaughter should not be given, unless the issue on a trial for murder, is raised by the evidence, there being no testimony in the instant case appearing in the record, raising the issue of manslaughter; the trial court properly refused to charge on that issue.

5.—Same—Evidence—Exclusion of—Harmless.

Where the court excluded testimony of a witness Perkins that the deceased told him he had an ill grudge against the name Lilly, (the name of appellant) in view of the fact that said witness was permitted to testify that deceased told him he was going to get a gun and kill appellant, no injury is shown.

ON REHEARING.

6.—Same—Bill of Exceptions—Qualifying—Effect of.

Where the trial court in qualifying a bill of exceptions which complained of the admission of statements made by deceased, said that the testimony was

*res gestae* and was made while appellant was under arrest, and such bill is accepted and filed by appellant and he having failed to challenge the correctness of the court's explanation of the bill, at that time, he is not in a position to assail it on appeal. Following Goss v. State, 57 Tex. C. R. 557 and other cases cited, also see Vernon's, Tex. Crim. Stat. V. 2, p. 556, note 35.

7.—Same—Evidence—Bills of Exceptions—Practice.

Where a bill of exceptions is taken to the cross-examination of appellant such bill should show that the question and answer objected to was not warranted by the evidence, or no error is presented for review by this court.

Appeal from the District Court of Hardin County. Tried below before the Hon. Geo. C. O'Brien, Judge.

Appeal from a conviction of murder; penalty, five years in the penitentiary.

The opinion states the case.

*Singleton & Bevil,* for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

LATTIMORE, Judge.—Appellant was convicted in the district court of Hardin County of murder, and his punishment fixed at five years in the penitentiary.

Appellant and Gray, deceased, lived near each other and were at outs resulting principally from differences and disputes between the wives and children of the respective families. On the morning of the homicide deceased and his young son were sawing wood some distance from the houses of the parties, estimated at from a few hundred yards to a quarter of a mile. Appellant took his double-barrel shotgun loaded with buckshot, went to the place where they were at work, and after a short parley with deceased shot him twice, killing him almost instantly. A daughter of deceased was an eye-witness and testified to a short conversation between them, and that appellant raised his gun and said he was going to kill deceased, who remonstrated with him; that appellant lowered his gun but raised it and fired. Deceased said to his boy, "Goodbye son, he has killed your father." She further testified that deceased had nothing in his hands and was standing by the log on which he and his son were sawing when appellant came up. Mr. Bracken testified that he met appellant after the killing and the latter said, "I killed Mr. Gray this morning." Witness replied, "The thunder you have, what did you do it for?" and appellant said, "He threatened my life yesterday; I never could get over it; the more I studied about it, the madder I got, and this morning I went and took my gun and went and killed him." This witness went to the body of deceased and found him shot in two places with buckshot,

the holes being described as between the size of a fifty cent piece and a dollar. This witness also searched for weapons but found none. The feet of deceased were under the cross-cut saw and his body lying upon the handle of same.

There are six bills of exception the first of which was to an assumption by the State's attorney in a question to the accused while a witness, of the fact that deceased was "in the bushes" when appellant went down there and shot him. The bill shows no error. The testimony in the record as well as that quoted in the qualification to this bill, shows that deceased was in the bushes. The refusal of the court to give appellant's counsel time to then prepare his bill might be held erroneous if there was any showing that a fuller bill was desired or could have been obtained by its then statement, than was later allowed by the court. One who complains of the refusal of the allowance of sufficient time to take a bill of exceptions, must make some showing of injury.

Witness Bracken was allowed to state what appellant said to him when they met shortly after the killing. Bracken was a justice of the peace. The introduction of his testimony reproducing appellant's statements was objected to on the ground that the latter was under arrest. We have examined Bracken's testimony and find nothing in it indicating that appellant was under arrest, or that anything was said or done to him to induce him to have that belief. One who interposes an objection such as this must substantiate it by proof and nothing of that kind appears in this bill.

Complaint is made of the fact that the court gave appellant's counsel only an hour and five minutes in which to prepare his exceptions to the court's charge. This is a matter necessarily largely within the discretion of the trial court and facts must be shown in a complaint of this character by which we may be made aware of some injury. The only exceptions taken were to the failure of the charge to submit the law of manslaughter and that of suspended sentence, and also that the charge on threats was confusing and did not affirmatively present appellant's theory regarding same. It appears to us that the exceptions taken could have been prepared in a very short time. The charge was not unusually long, nor was it in any way complicated. We find no application for a suspended sentence in the record, and there is no showing in the bill of any other matters in the charge to which an exception would have been taken, or which were erroneous and which if excepted to, could have availed appellant. Merely to say that appellant wanted time to take other exceptions is but a conclusion and unless it be shown that there was some fault in the charge to which an exception could have been taken in such manner as to have benefited the accused, we would not be inclined to hold that a longer time was necessary than was given.

The argument of State's attorney complained of in bill of exceptions No. 4 seems in line with the testimony and not to be subject to the objection appearing in the bill.

Appellant excepted to the charge for its failure to submit manslaughter and a special charge was offered upon that issue, and refused. We have carefully reviewed the facts and are of opinion that such charge was not required. Aside from the fact of there being ill-feeling between the men, as above referred to, appellant claimed to have overheard deceased on the afternoon or night before the homicide, make statements which appellant construed to be threats to take his life before the sun rose and set again. The next morning deceased and his little boy took their tools and went down in the woods and began sawing wood. As above stated, appellant then took his shotgun loaded with buckshot, went to where deceased was at work and after a short conversation, shot him twice. He claimed that when he accosted deceased the latter began to make a loud noise like a blowing horn and leaned toward a log. He said he thought deceased had a shotgun under the log and so thinking he shot and killed him. We see nothing in this to raise the issue of manslaughter. There is no complaint of the charge of the court in regard to self-defense and same appears to us to sufficiently present the issues.

Bill No. 6 was taken to the refusal to permit one Perkins to state that deceased told him he had an ill grudge against the name Lilley. We observe in the record that this witness was permitted to testify that deceased told him he was going to get a gun and kill appellant, and in view of this we perceive no serious harm in the rejection of the indefinite general statement made regarding the name Lilley, if in fact the witness would have testified to this. The qualification of the court to this bill states that this witness testified that no statement was made affecting appellant's family in any way. We also observe that if we understand this record it seems bare of testimony showing any effort on the part of deceased to execute threats if theretofore made by him. He had no gun in his hand and none was found at the scene of the killing, and all that appellant claims deceased to have done was to make the noise above mentioned and to have put his hand toward a log under which appellant says he thought deceased had a shotgun. He saw no shotgun or anything resembling one, nor does he give any sufficient reason for so thinking. However the court did charge the jury on the issue of threats and in a manner to fairly give appellant whatever benefit a charge on that theory was calculated to allow him.

We find no error in the record, and the judgment will be affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—Appellant insists that in refusing to sustain Bill of Exceptions No. 2, this court was in error. From the bill we take the following:

"When the State's witness, Monroe Brackin, was on the stand he was interrogated about certain statements made by the defendant to the said Monroe Brackin on the day of the homicide; and it had been developed by the testimony of the said Monroe Brackin that he was at that time a Justice of the Peace of Hardin County and the defendant had gone to him to give himself up and told him that he, defendant, had kill Joe Gray, and the said Monroe Brackin was permitted over the objection of the defendant to testify to the jury as follows:"

In qualifying the bill, the court said that the testimony was res gestæ and was a voluntary statement made while the appellant was under arrest. The bill was accepted and filed by the appellant without availing himself of the privilage of objecting to it. See Exon v. State, 33 Texas Crim. Rep. 461; Thomas v. State, 83 Texas Crim. Rep. 325. This signifies his adoption of the bill as qualified. Goss v. State, 57 Texas Crim. Rep. 557, and other authorities collated in Vernon's Texas Crim. Stat., Vol. 2, p. 556, note 35; also Waters v. State, 81 Texas Crim. Rep. 491; Fults v. State, 83 Texas Crim. Rep. 602; Wilson v. State, 87 Texas Crim. Rep. 625; Porea v. State, 227 S. W. Rep. 305. Appellant having accepted and filed the bill and failed to challenge the correctness of the court's explanation of the bill at that time, he is not in a position to assail it on appeal. If, however, the qualification were disregarded, we find ourselves confronted with the proposition that the bill fails to show that the testimony adduced was not res gestæ. The declaration of the appellant is of a nature that might be res gestæ and therefore admissible, although the circumstances were such as to show that the accused was in custody at the time. See Calloway v. State, 92 Texas Crim. Rep. 506. Ignoring the qualification of the bill, it leaves open the question as to whether the evidence adduced was res gestæ. The action of the court in receiving the testimony on appeal is presumed correct unless by the bill it is shown to be erroneous. Moore v. State, 7 Texas Crim. App. 14; Douglas v. State, 58 Texas Crim. Rep. 122. The testimony set out in the bill being such as might have been properly received as res gestæ and the bill failing to show that it was not res gestæ, the presumption that the court correctly ruled prevails. Ford v. State, 40 Texas Crim. Rep. 284; Brown v. State, 83 Texas Crim. Rep. 451; Branch's Ann. Texas P. C., p. 134, sec. 209. See also Cavanar v. State, 269 S. W. Rep. 1053.

In Bill No. 1 it appears that counsel for the State, while cross-examining the appellant, said:

"Notwithstanding that you thought he had been armed, and that you were afraid, you went down there ·in the bushes where he was armed with a gun to see about the trouble?"

The bill does not show that this was not warranted by the evidence. The qualification contains this quotation from the statement of facts:

"There was a right smart clump of bushes there, thick between where the house was and where Mr. Gray was working."

As qualified, the bill, in our judgment, shows no error. We will add that in our opinion, tested by the statement of facts, the question was not so foreign to the record nor so harmful as to warrant a reversal of the judgment.

Without discussing them, we have re-examined the bills and the record in the light of the motion for rehearing, and are of the opinion that the proper disposition was made of the appeal upon the original hearing.

The motion is overruled.

*Overruled.*